IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| SHERYL A. SCHMIDT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-10-843-RO |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sheryl Schmidt ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability benefits and supplemental security income payments under the Social Security Act, 42 U.S.C. § 423. Both parties to the proceeding have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment [Tr. 17]. Upon review of the pleadings, the record ("Tr."), and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

**Administrative Proceedings**

Plaintiff initiated these proceedings by protectively filing her applications seeking disability benefits and supplemental security income payments in February, 2008 [Tr. 101 - 104 and 105 - 107]. She alleged that arthritis in her ankles, feet, back, and knees, as well as

posterior tendon dysfunction, bone spurs and flat feet have resulted in pain, in the inability to be on her feet all day, and in difficulty with lifting, all of which became disabling as of March 1, 2002 [Tr. 131]. Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted a June, 2009 hearing where Plaintiff, who appeared with a representative, and a vocational expert testified [Tr. 20 - 51 and 74 - 75]. In his July, 2009 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other work available in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 11 - 19]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on

2

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

While Plaintiff presents multiple claims of error on judicial review, remand is recommended for the reason that the ALJ's credibility assessment is legally deficient. Accordingly, the remaining claims will not be addressed. *See Watkins v. Barnhart,* 350 F.

3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**Analysis**

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, the reasons for credibility determinations "must be grounded in the evidence and articulated in the determination or decision." Social Security Ruling 96-7p, 1996 WL 374186, at *4; *see also Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (holding that credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."(quotation omitted). Here, the ALJ's decision provides as follows:[1]

> At the hearing, the claimant testified, under oath, that: She is 49 years old, is 5 feet 7 inches tall, and weighs 260 pounds. The claimant stated that she has a college degree in radiologic technologist. She last worked yesterday as a customer service rep for Sykes Call Center in Ponca City. She returned to work on June 19, 2008.[2] When she was working as a body wrapper tech in

---

[1] Unless otherwise indicated, quotations in this report are reproduced verbatim.

[2] The ALJ states at the outset of his decision that "[a]t the hearing, the claimant, through her representative, requested a closed period from December 1, 2002 through June 19, 2008." [Tr. 11]. In this regard, the record reflects that at Plaintiff's June, 2009 hearing – one year after she returned to work – the following exchange took place between the ALJ and Plaintiff's representative:

REP: Okay. First of all, we're going to change that onset date to 12/1 of '02.

ALJ: 12/1 of '02?

4

2004, she only worked part-time but had to lift and physically wrap people. She was on her feet with that job. She was fired from her job as a x-ray tech, because she could not be on her feet due to problems with her legs, feet, and knees. She had to use her 401K to live and filed for disability.

The claimant further testified that: She has degenerative joint disease in her feet, ankles, and back. Her feet are flat. Sitting for a long time causes pain and when she gets up it is hard to walk due to the pain in her feet and ankles. The claimant stated she uses a higher chair now and when she starts to walk, it takes 5 to 6 steps before she is steady enough to stand up straight. She also experiences incontinence up to 15 times a day. The doctor told her rest is the best relief. After going to Wal-Mart, she has to lie down for hours on her stomach to sleep. She took herself off Vioxx, because she does not like taking muscle relaxers and pain medications and she was concerned about addiction. The claimant reported her sister does the chores the claimant cannot. She needs help making the bed, with cooking, and several times a week with her personal needs. During the closed period, there were several days when she did not shower or dress. She had to quit doing yard work, because she would be down for days afterwards. Exercise consists of swimming in a deep pool.

The claimant also testified that: She spends her time watching TV or sitting outside in the sun. She reads when she is able to concentrate but most of the time she loses track. Once a month, she goes to Mass Club to visit with church friends. She is unable to go walking and used to train horses but had to stop. The claimant reported she is able to sit 30 to 40 minutes, stand 20 minutes, and lift 12 to 18 pounds. She used a red wagon to carry things in the house.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected

---

REP: Yes. And then we are asking for a closed period up until June the 19th of '08. Even though she's, has had some very serious physical problems, she has, we'll talk about the medical improvement, and she's been able to now work at a sedentary job sine June of '08.

ALJ: Okay. Basically, from 12/1 of '02 to June 19th of '08?

REP: Yes, Sir.

[Tr. 23].

5

to cause the alleged symptoms;[3] however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[4]

[Tr. 15 - 16].

At this point in his decision, the ALJ inserts a footnote setting out the criteria for evaluating Plaintiff's subjective complaints [Tr. 16, n. 1]. He then continues with a summary of a portion of the objective medical evidence of record:

> The claimant has alleged disability, in part, due to problems with her feet, knees, and back. Sidney Williams, M.D. diagnosed her with osteoarthritis of the knees after x-rays revealed osteophytes and medial joint space narrowing. Dr. Williams indicated the claimant had probable osteoarthritis of the lumbar spine aggravated by morbid obesity, which was causing stress on the musculoskeletal system. He also noted the claimant suffers from pes planus. James E. Webb, D.P.M. evaluated the claimant on September 11, 2007. The record shows a complete biomechanical, range of motion, and gait evaluation was performed. It was noted that the claimant was scanned for orthotics, but they would hold on those until they had approval.

---

[3]Having made this determination, the ALJ was required to consider Plaintiff's allegations of disabling pain and other symptoms in order to "decide whether he believe[d them]. *Thompson v. Sullivan*, 987 F.2d 1482,1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

[4]The ALJ found that Plaintiff retained the capacity to perform light work restricted by only occasional climbing, balancing, stooping, kneeling, crouching, or crawling [Tr. 14].

> L.W. Ghormley, M.D. evaluated the claimant on April 8, 2008. The claimant reported complaints of painful feet, painful ankles, painful knee joints with right knee being worse, and low back pain with intermittent sciatica. She has a history of two fractures of the right 5th metatarsal and reported she was told she has a torn meniscus in the right knee and arthritis of the feet. On examination, the claimant was 5 feet 8 inches tall and weighed 282 pounds. Her blood pressure was 146/90. The thoraco-lumbar spine demonstrated slight limitation in range of movement without evidence of scoliosis, pain, tenderness, or muscle spasm. Straight leg raising was negative in both the sitting and supine positions. She could rise on her toes but could not heel walk or toe walk. The lower extremities were put through a full range of motion. The doctor diagnosed the claimant with hypertension, stage I; morbid obesity. BMI of 42.9; genu valgus, right knee, striking; genu Valgus, left knee, mild; pes planus, 3rd degree, bilateral; pronation of forefeet; and visual impairment, corrected with glasses. He also indicated the claimant is able to effectively oppose the thumb to the fingertips; manipulate small objects; and effectively grasp tools such as a hammer.
>
> MRI of the lumbar spine dated September 12, 2008, revealed grade I spondylolisthesis of L4 on L5 vertebrae with moderate degenerative disc disease with no fracture seen. Mild encroachment of both foramina was present at L4-5 and L5-S1.
>
> As for the opinion evidence, great weight is given to the State agency medical consultant's opinion and to those of Drs. Shields and Ghormley. Naomi N. Shields, M.D. thought the claimant could certainly work a sit-down job with some limited walking and standing and added the claimant's weight was a large part of her problem. On that date, the claimant's weight was 294 pounds and, at the hearing, the claimant testified she has since lost 80 pounds. Dr. Ghormley was observed the claimant's gait was safe, stable, and of normal speed with no assistive device was required.

[Tr. 16 - 17, record references omitted].

The ALJ then set out his credibility findings as follows:

> The Administrative Law Judge does not discount all of the claimant's complaints. In view of her degenerative disc disease, foot fractures, and obesity, she would undoubtedly have some difficulties. However, there is no evidence that any of the claimant's treating physicians have told her to do nothing all day. Given the objective medical evidence in the record, the

7

> Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

[Tr. 17].

In urging that the ALJ failed to properly assess her subjective complaints, Plaintiff takes issue [Doc. No. 19, p. 12] with the ALJ's reliance on his assertion that "there is no evidence that any of the claimant's treating physicians have told her to do nothing all day." [Tr. 17]. While the statement is accurate,[5] Plaintiff correctly argues that it could only have meaning to her credibility had she, in fact, maintained that she did nothing all day and did so at the direction of her physicians [Doc. No. 19, p. 12]. Plaintiff made it clear through her testimony that during the closed period she had bad periods when she could not even get dressed [Tr. 37] and that if she overdid, resting brought her the best relief [Tr. 34].[6] Nonetheless, Plaintiff testified that during the closed period she "would go out and do what she could," *id*, such as go to Walmart, *id.*; vacuum [Tr. 35]; clean the bathroom vanity [Tr. 36]; wash dishes, *id.*; cook several times a week, *id.*; take care of her own personal needs [Tr. 37]; shop [Tr. 38]; swim in the community pool, *id.*; watch TV and read [Tr. 38 - 39]; sit outside, *id.*; attend mass [Tr. 40]; attend a monthly meeting, *id.*; and, visit back and forth with a friend. *Id.* In other words, Plaintiff did not suggest her symptoms were so disabling that

---

[5]*See Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993) (cautioning against the reliance on the absence of evidence).

[6]Plaintiff affirmed that she had "told [a] doctor once that rest brings the best relief for [her]." [Tr. 34].

she did nothing all day, every day except stay in bed and rest at the direction of her physicians, and the ALJ's rationale for marginalizing Plaintiff's credibility on this basis is not adequately "grounded in the evidence[.]" Social Security Ruling 96-7p, 1996 WL 374186, at *4.

The Commissioner does not defend the validity of the ALJ's finding "that Plaintiff's treating physicians did not tell her 'to do nothing all day,'" [Doc. No. 20, p. 10], but argues instead that "this was just one factor that the ALJ considered[.]" *Id.* at 10 - 11. The Commissioner contends that "[f]or example, the ALJ discussed Plaintiff's activities, such as cooking, swimming, watching television, shopping at Walmart, and visiting with friends." *Id.* at 11. Contrary to the Commissioner's claim, however, the ALJ was summarizing the Plaintiff's testimony about her limited ability to conduct these activities [Tr. 15] and was not proffering these limited activities as rationale for negating Plaintiff's credibility. Indeed, to have done so would have been improper. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1221 (10th Cir. 2004) (an ALJ may not "rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." (quotation omitted).

Next, the Commissioner argues that "the ALJ considered alleged aggravating factors such as sitting for a long time and modes of relief such as rest." [Doc. No. 21, p.11]. There is nothing in the ALJ's reference to such evidence, however, that explains what caused him to believe that Plaintiff's subjective complaints were not credible if, in fact, he was even considering the evidence in that regard. The same is true with respect to the Commissioner's statement that "[t]he ALJ also considered that Plaintiff stopped taking pain medication[.]"

9

*Id.*[7]  It is not apparent from the record that the ALJ was considering this as a factor undercutting Plaintiff's credibility rather than as a part of his summary of her testimony [Tr. 15]. No explanation linking this fact to his ultimate credibility assessment was provided by the ALJ. Rather, the Commissioner is asking the court to make assumptions about the ALJ's thought process rather than to review findings that are clearly stated in the record.

Finally, the Commissioner alleges that "[t]he ALJ considered the inconsistencies between Plaintiff's testimony and the objective medical evidence." [Doc. No. 20, p. 11]. The inconsistencies referenced by the Commissioner in his brief, however, are inconsistencies that he, rather than the ALJ, has isolated. The ALJ made no such specific findings for this court's review. The role of the court is to evaluate the ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) (citation omitted).

Plaintiff "is entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence[.]" *Kepler,* 68 F.3d at 390 (citation omitted). Because the ALJ failed to adequately link his credibility findings

---

[7]Plaintiff testified that

> I had different meds I had been on. I, I didn't like the Vioxx. I took myself off of it before the FDA took it off the market. I, I didn't like the muscle relaxers, basically, because when I had any of those, that's all I did. The pain meds, I was kind of, I was a little bit leery of them just because I know too many people that they have chronic pain now, so the next thing you know, they have a chronic addiction and - -

[Tr. 34 - 35].

to substantial evidence of record and otherwise failed to adequately articulate those findings for meaningful review, his credibility assessment is legally deficient.

**Conclusion**

The decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion. Judgment will be entered accordingly.

IT IS SO ORDERED this 23rd day of May, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE